# E. G. HANRICK v. JOHN CAVANAUGH.

### SUPREME COURT, AUSTIN TERM, 1883.

*Trespass to Try Title.—Forgery of Land Grant—Verdict.*—Where the verdict of the jury is supported by the evidence it will not be set aside, unless some error has been committed in the giving or refusing of charges, or in the admission or exclusion of evidence. See opinion for facts held sufficient to sustain a verdict that a grant was a forgery.

*Same.*—If a grant is a forgery and was never issued by the officer by whom it purports to have issued, or if by subsequent alterations it has been made apparently to confer rights not conferred by it at the time it was issued, then it is not voidable only, but is absolutely void, and is subject to attack by any one against whom it is sought to be used.

*Same—Evidence.*—See opinion for evidence held to be properly admitted on an issue of forgery.

*Same—Annulling Land Titles.*—The Commissioner of the General Land Office had no authority to create or annul titles to land by ex parte orders to surveyors.

Appeal from Williamson County.

*Walton & Hill, E. J. Gurley* and *D. G. Smith,* for appellant.
*Terrell & Walker* and *Fisher & Makemson* for appellee.

Opinion by Hon. B. H. Bassett, Special Judge.

This is a suit of trespass to try title brought by the appellant Hanrick against the appellee Cavanaugh. The cause was tried by a jury and resulted in a verdict and judgment for the defendant, from which the plaintiff appeals. The plaintiff claims title by mesne conveyance under a concession for eleven leagues of land embracing the premises in controversy granted by the government of Coahuila and Texas, the final title to which was extended on the 22d of October, 1833. Only one hundred and sixty acres are involved in this controversy, which the defendant claims under a pre-emption survey dated December 12th, 1874, and among other defenses he filed an affidavit impeaching the grant to Rafael de Aguirre for forgery in the final title. The jury found a general verdict for the defendant, and under instructions from the court to return a special verdict on the issue made as to the genuineness of the title to Aguirre, found that it was in fact a perjury; and the principal question discussed in the briefs and arguments of counsel relate to the genuineness of this instrument. The verdict of the jury, if supported by the evidence, is conclusive against the plaintiff's right to recover, unless the

court has committed some error to his prejudice in the giving or refusing of charges, or in the admission or exclusion of evidence. The first question presented relates to the sufficiency of the evidence to support the verdict declaring the grant to Rafael de Aguirre a forgery. The plaintiff introduced in evidence a certified copy from the general land office of a translation of the original grant, consisting of the application for the land, the reference to the empresario for their consent to a selection of the land within their colonial enterprise; their consent; the selection of the land and its survey by the colony surveyor; the return of the field-notes, and the extension of the final title. The survey embraces ten leagues on the Gabriel, now in Williamson county, and one league on Cow Bayou, now in Falls county. These instruments were on their face regular and sufficient, *prima facie*, to vest title in the grantee to the eleven leagues of land embraced in the grant.

[This statement is made subject to the qualification that while the name of Rafael de Aguirre appears elsewhere in the grant, the name of one Perfecto Valdez appears as the grantee in the granting clause of the final title. This court has heretofore, however, in passing upon this same title, in Hanrick v. Jackson, 55 Tex., 17, treated this instrument, as ON ITS FACE, a grant to Rafael de Aguirre, and we see no reason to question the correctness of that ruling]

The application for the concession upon which this grant to Rafael de Aguirre purports to be issued, was made in a single instrument by three parties, to-wit : Jose Maria de Aguirre, Rafael de Aguirre and Tomas de la Vega, and the concession which was also in a single instrument, was attached to the title of another of the parties, and an unauthentic copy only was embodied in the title of Rafael de Aguirre, but that circumstance was in Hanrick v. Jackson properly held not to affect the validity of the grant. In support of the issue tendered by his affidavit of forgery, the defendant introduced from the archives of the general land office the original of the grant, under which the plaintiff claims, with photographic copies of the same and parole evidence relating thereto, from which it appears that a number of erasures, alterations and interlineations in material portions of the final title, having been made since it was originally written. The name of Rafael de Aguirre is written over some other name, apparently that of Perfecto Valdez. The recital of the date of concession has been altered by writing the 14th June, 1830, over

some other date; apparently the 13th July, 1830, while the words "and the 2d of May of the past year," have been interlined. The locative call has been changed by writing the words San Javiel or San Gabriel over other words, apparently the Brazos river, while words "and the Cow Bayou," have been interlined. The mode of making the alterations in the name of the grantee, in the recital of the date of the concession and of the locative call on the San Gabriel, was generally, though not uniformly to erase by scratching out the original word or words except such parts of them as might be used in forming the substituted words. The work if done with the design to conceal the alterations was not very skilfully performed, but the alterations would scarcely attract attention on a casual reading of the instrument. The words interlined, and those substituted, but not those erased, are noted in the emendation clause at the foot of the instrument, and above the signatures of the Alcalde and the assisting witnesses. The handwriting of the emendation clause, though smaller and rather more clearly written than the body of the instrument yet bears a general similarity to it; but there is some conflict in the opinions of different witnesses as to whether both are in the same handwriting. It is not denied by the defendant that the signature of the Alcalde Lesasseur and those of the assisting witnesses Givens and Peebles are genuine. The charge of forgery is predicated on the idea that the erasures, substitutions and interlineations were made and the emendation clause added after the instrument had been signed and issued, whereby a final title, originally extended to Perfecto Valdez, for lands on the Brazos river, has been made to read as if extended to Rafael de Aguirre for lands on the Gabriel and Cow bayou. The papers connected with this title show that Samuel M. Williams, who was associated with Austin in the colonial enterprise, within the limits of which the grant was located, acted as attorney for Aguirre in soliciting the concession, and for himself and Austin in consenting to the location within their colony; that as attorney for Aguirre he had applied for and received from the alcalde the final title in question, and, as his attorney, had afterwards sold the land to the plaintiff's remote vendor. The defendant introduced also the original application of Perfecto Valdez for a concession of eleven leagues of land, dated July 10, 1830, and the concession dated July 13, 1830, the consent of the empresarios, Austin and Williams, to the location of the sur-

vey within their colony, a certified copy from the general land office of a chain of title from Perfecto Valdez to Mrs. Jane McManus, the English field-notes of an eleven league survey on the east bank of the Brazos river, made for Mrs. McManus, and a map, or sketch, from the general land office, from which it appears that the Perfecto Valdez or McManus eleven league grant was located on the Brazos river. No final title appears to have been issued on this concession to either Perfecto Valdez or Mrs. McManus, but the final title which was extended to Rafael de Aguirre and under which the plaintiff claims, would, prior to the alterations, erasures and interlineations already referred to, have perfectly fitted the Valdez concession. The defendant also introduced a copy of another eleven league grant issued to the same Rafael de Aguirre, which as shown by the maps, was located on the Brazos river. It purported to be based on the same application and concession upon which the grant in controversy was issued. The application for this grant was also made by Samuel M. Williams as attorney for Rafael de Aguirre, and he for himself and Austin as empresarios consented to the location within their colony. The final title was issued October 4, 1833, Williams acting for Aguirre in applying for and receiving it. The dates of Williams' several acts in connection with this title are identical with those performed by him in connection with the title for the grant on the Gabriel and Cow Bayou which is in controversy in this suit. The defendant introduced also a certified copy of a grant of eleven leagues to Miguel Rabaga, for whom also Williams was attorney, the field-notes of which call for the last mentioned survey for Rafael de Aguirre on the Brazos, and which the maps show to be connected, both being located on the Brazos river. The defendant also introduced in evidence the last page of a certified translated copy of the Rafael de Aguirre grant, the certificate being dated in 1855, and a certified copy of the last page of the same title in Spanish made in 1838, in neither of which is the emendation clause noted at the foot of the title as it now appears. In both copies, however, the body of the instrument is identical with the face of the grant as it now appears, no alteration or interlineation appearing, and it is not improbable that the emendation clause existed at those dates, and was omitted by the copyist because in giving a clear copy of the instrument the emendation clause would be meaningless, there being nothing in the copy to which it could apply. Other circumstances

more or less remotely bearing on the question at issue, shown in evidence or claimed to be matter of public history and judicial cognizance, were invoked by the defendant in support of his theory that the grant purporting to have been extended to Rafael de Aguirre on the 22nd of October, 1883 was in fact forged by altering the final title issued to or intended for Perfecto Valdez, so as to make it read as a grant to Rafael de Aguirre for the ten leagues on the Gabriel and the one league on Cow Bayou, including the premises in controversy. The plaintiff in rebuttal showed, what indeed was not denied by the defendant, that the signatures of the alcalde and of the assisting witnesses to the grant were genuine; the defendant's theory being that the alterations constituting the forgery were made subsequent to the execution of the instrument. In this connection is to be considered the extreme strictness of the civil law in guarding against fraudulent alterations of public instruments—a familiarity with which must be presumed on the part of the officer who extended the title in question and of those who were interested in it. The following passage translated from Escriche's dictionary of legislative title to instruments, will convey an idea of the rules of the civil law relating to this subject. From page 886, second column : "In order that a public instrument be considered authentic and lawful, the following circumstances are required : * * * Page 888, second column. "8. That the document be cleanly written, without blanks, erasures, obliterations, interlineations or corrections, especially in the substantial parts; for example, in the names and surnames of parties, of the notary public, and the witnesses, in the terms and the amount, and the thing in relation to which the writing is done, in the compact and conditions, and in the day, month and year of the date, and in the place where the instrument was executed; and that in case that any correction, obliteration or addition be made at the time of reading the instrument to the parties, the same be authenticated at the foot of it by the notary, previous to the signing, in order to prevent suspicion of fraud. (Ley III, title 18, part 3; Ley XII, title 18, part 3; Ley I, title 23, title 10, Nov. Rec., and code de cem, Art. 240.)

"The two laws of the Partidas above quoted, characterize as suspicious and unworthy of credit any instrument of writing which has been scratched, corrected, underscored, written over, or torn or cut in any of the substantial parts above referred to, unless the party

introducing it shall prove that it was done by force or accident; and on the contrary they require its admission as valid, if it bears no such vices or defects in any of its essential parts, and when there is no suspicion of a fraudulent intent.

"The second part of the provisions of these laws is perfectly just in relation to any instrument, whether a matrix or an original copy, for the rejection of a paper for an unimportant vice or defect, would be intolerable. Likewise the first part of the provision concerning the copy called original, introduced or exhibited by a party in support of his claim, appears to be just; since the instrument in his power, having operated, or having to operate in his favor, an essential operation in it, and not authenticated, by the notary public, should be attributed to him, and nobody else, unless the contrary be proven. In fact, the laws above mentioned, seem to have referred to that class of instruments.

"But shall we also apply the first part of the provisions to the "matrix" preserved by the notary public among his protocols? If the instrument (the matrix) appears with the obliterations, additions, corrections, or other alterations, not authorized as the law requires, shall it be null and void to the prejudice of either, and perhaps both parties? We may suppose either that the two instruments were closed and signed after the alterations were made, or, on the contrary, that the alterations were made after the instrument had been perfected and signed. It would be natural to suppose that the instrument was closed and signed without the alteration, for the presumption is that while writing the notary public would conform himself to the requirements of the law, and the law required him to mention and authenticate them before signing, if, in fact, they existed at that time. Therefore an instrument shall not be null on account of the failure to approve or authenticate the alteration that may be found in it, because it should not be in the power of the notary public or anybody else thus to destroy the effects of an authentic document to the prejudice of the parties interested; but on the contrary the alterations shall bear the vice of nulity, the additions, writing over, erasures and the corrections shall be considered as not having been made, and the words unlawfully written over or erased, or altered, shall be considered as existing, and shall have all their effects when their tenor can be ascertained, or an interpreta-

tion, or combination of that which precedes, or that which follows, discloses their meaning.

"It may be objected that this would suppose fraud on the notary public, against the general rule that fraud should not be presumed; and that it is more reasonable to suppose in him mere neglect, and that he overlooked the alterations, which were already made. But in the first place it is quite possible that it was not the notary public, but some other person who made the alteration; and in the second place the notary should blame himself for having given room for this presumption against him; in the third place, the fate of instruments should not be left at the mercy of an amanuensis or other person who might be seduced by one of the parties.

"Besides, if the original copy is in existence, the fact of the reproduction or omission of the words written or added, may assist to ascertain whether the alteration was made before or after the closing and signing of the principal document, and consequently it will be possible to decide whether there was fraud or a mere omission. From page 888.   *   *   *

"Sixth: That the day, month and year, and the place or town where the instrument is executed, should be expressed as well as the names, surnames and residences of the parties and witnesses. The names of persons and towns should not be written with their initials alone, nor should any alterations or ciphers that in substantial things may produce obscurity, equivocation, or contention; and that quantities and dates be expressed in letters, and not in numbers and figures, under penalty of nullity of the instrument, and upon the responsibility of the notary public for any damage and injury that by his act may accrue to the parties." Eschriche Dici Leg. pp. 886-888.

We have not overlooked the fact that the field notes contained in the title to Rafael de Aguirre for the lands on the Gabriel and Cow Bayou purport to have been made by the surveyor, F. W. Johnson, and from his deposition found in the statement of facts it appears that in 1833 he made a survey of the land in question for one Williamson, (Williams?). But the answers of the witness, however important to either party, are copied into the transcript without the interrogatories necessary to make them intelligible. The survey made by him and incorporated into the grant by Rafael de Aguirre are without dates. The testimony or duplicate original of the final title to Rafael de Aguirre, which ought regularly to have been issued

and delivered to the grantee or his attorney on the extension of the title, is not produced or accounted for. Upon a review of all the evidence submitted by both parties to the jury on the issue of forgery, we are not able to say either that their verdict was without evidence to support it, or that it was so manifestly against the weight of the evidence as to authorize this court under its well settled rules to set it aside. The appellant assigns as error the charge of the court submitting to the jury the issue whether or not the original title from the government to Rafael de Aguirre, dated October 22, 1883, was a forgery. The court charged the jury in effect that the grant to Rafael de Aguirre, under which the plaintiff claimed, was on its face regular and sufficient to vest title in the grantee, and that the plaintiff was entitled to recover unless they should find from the evidence that the original title was a forgery; and charges asked by plaintiff, presenting at greater length his claim of title and ascertaining its sufficiency to entitle him to recover, were modified by the court by adding: "Unless you find from the evidence that the final title was forged."

The court also submitted to the jury a special issue as to whether said original title was in fact forged—all of which is complained of by the appellant, and in support of his views he urges the authority of Hanrick v. Jackson, supra. It was held in Hanrick v. Jackson that the defendant claiming under a junior grant and showing no equity existing prior to the issuance of the title to Rafael de Aguirre could not successfully impeach the grant for fraud or irregularity in its issuance, from which it is argued that in this case the defendant, who also claims under a junior right unconnected with any antecedent equity, ought not to be permitted to question the grant on the ground of forgery. But if the grant is a forgery; if it was in fact never issued by the officer by whom it purports to have been issued, or if by subsequent alterations it has been made apparently to confer rights not conferred by it at the time it was issued, then it is not voidable only; it is absolutely void, and is subject to attack by any one against whom it is sought to be used. We find no error, therefore in the submission to the jury upon the issues raised in this case of the question of the genuineness of the title under which the plaintiff claimed, and denying him the right to recover in case the jury should find it to be a forgery.

It is insisted that the court erred in admitting in evidence, and

afterwards in refusing to withdraw from the consideration of the jury, the several instruments already referred to, tending to show that Rafael de Aguirre had previously received a perfect title to eleven leagues on the Brazos, based on the same application and concession on which the grant in controversy purports to be based; that other grants, issued about the same time and with which Williams was also connected, recognized the survey made for Aguirre on the Brazos; that Perfecto Valdez had taken the preliminary steps which would have authorized the extension to him of a final title, such as that under which the plaintiff claims appears to have been before its mutilation, together with the maps and sketches from the general land office showing the location of the first eleven leagues granted to Rafael de Aguirre on the Brazos, with corrected surveys, and of the Perfecto Valdez survey, also on the Brazos, with its connected surveys, and the certified copies made in 1838 and 1855 of the final title to Rafael de Aguirre for the lands on the Gabriel and Cow Bayou. The objection to the evidence was because of its supposed irrelevancy.

We think, however, that on the issue of forgery made by the affidavit, which must be sustained, if at all, upon circumstantial testimony, the evidence offered, though some of it was remote and entitled to but little weight, was proper to go to the jury and to be considered by them in connection with all the other facts and circumstances bearing on the issue.

The admission of the land office copies of the chain of title from Perfecto Valdez to Mrs. McManus was especially objected to on the further ground that no final title having issued, they were not properly archives of the land office; but we think they were properly admitted under the provisions of the R. S. 2253, 2259 and 3808.

Such assignments and transfers, are, under the provisions of the revised statutes, made archives of the land office, and are not subject to be withdrawn by the parties at interest, and the rule and the reasoning in Short v. Wade, 25 Tex. 510, no longer apply. It is further to be observed that the error, if any, in the admission of the certified copies would have been rendered immaterial by the subsequent introduction of the original instruments themselves, which, coming from proper custody, to-wit: the land office, and being more than thirty years old, were properly admitted without other proof of their execution.

The appellant assigns as error, the refusal of the court to admit in evidence the correspondence had in 1840 between J. P. Borden, then commissioner of the general land office, and James Howlett, county surveyor of the district embracing the eleven leagues on the Brazos, granted to Rafael de Aguirre on the 4th of October, 1883, and relating to that survey, the purport of which correspondence was to show that Williams had satisfactorily explained to the commissioner that a mistake had occurred by which two grants of eleven leagues each had been granted to said Aguirre, and that in the opinion of the commissioner, that which included the ten leagues on the Gabriel, dated October 22, 1833, (the one involved in the controversy,) was a genuine one, and that the eleven league survey on the Brazos was to be considered as subject to location and survey as though no title to it had issued. It is contended by the appellant that the evidence was proper as tending to show an abandonment by Aguirre of the survey on the Brazos, a recognition on the part of the proper officer of the government of the fact of such abandonment, and a like recognition by the proper officer of the validity of the title now in controversy. It is only necessary to suggest in reply that the commissioner of the general land office had no authority to create or to annul titles to land by exparte orders to the surveyors. (H. & T. C. R. R. Co. v. McGehee, 49 Tex., 489.)

The remaining assignments have been incidentally disposed of in the determination of those already considered.

We find no error in the judgment of the court below, and it will be affirmed.