## E. G. HANRICK v. W. A. DODD.

IN THE SUPREME COURT OF TEXAS, AUSTIN TERM, 1884.

*Civil Law—Public Documents.*—The civil law required that a public document be clearly written, without blanks, erasures, obliterations, interlineations or corrections; if corrections were made they should be authenticated at the foot by the officer. The officers acting under it will be presumed to be familiar with its requirements.

*Forgery—Land Title.*—See this case for evidence held sufficient to support a verdict, finding that a land title was forged.

*Government Grant.*—Under the laws of Mexico, as at common law, an estate granted by the government cannot afterwards be divested, upon mere surmise or suggestion. A formal conveyance, or a regular proceeding is necessary.

*Constitutional Law—Forged Title.*—Sec. 2, art. 14 of the constitution, was not intended to sanctify or validate forgery perpetrated against the government, and a forged title did not protect the land claimed under it, from location and survey.

Appeal from Williamson county.

Walton & Hill, Goodrich & Clarkson, Gurley & Smith, for appellant.

A. W. Terrell, for appellee.

Gooch, Special Judge: This action, which is in the usual form of trespass to try title, was brought in the district court of Williamson county, on the 12th day of November, A. D. 1877, by E. G. Haurick, appellant, against W. A. Dodd, appellee. Appellant claimed title under an eleven leagues grant, purporting to have been extended by Luke Lesassier, alcalde of the municipality of San Felippe de Austin, to Rafael de Aguirre, on the 22nd day of October, A. D. 1883. The appellee Dodd, answered by a plea of not guilty, and set up other defences, which need not be' stated. To the instrument evidencing the original grant, the appellee interposed an affidavit of forgery. The case was tried by a jury during the month of February A. D. 1884, and resulted in a verdict and judgment for appellee. The court submitted no other issue to the jury, than that of the alleged forgery, of the instrument attacked by the affidavit, and by their verdict they found it to be a forgery. The very able and exhaustive arguments, oral and written, of counsel for both parties, have been addressed chiefly to this question.

The first proposition made by the appellant, under his assignment of error, is in substance, that the verdict of the jury, on the issue presented, is not supported by the evidence. If this proposition is sustained, it will require a reversal of the judgment. If it is not, and if it is supported by the evidence, it is conclusive against appellant's right to recover, unless some error was committed by the court, to his prejudice during the trial.

A determination of this question requires an examination of the evidence. The title to Rafael de Aguirre purports to have been extended by Luke Lesassier, alcalde, by virtue of a concession in sale, by the governor, to Thomas de La Vega, Jose Maria de Aguirge and Rafail de Aguirre, for eleven leagues of land each, in a single instrument. A copy of it, and not the original, was made a part of the title under consideration. This however, has been held to

constitute no valid objections to it. (Hanrick v. Jackson, 55 Texas, Rep., 17; Hanrick v. Cavanaugh, Texas Law Reporter, Vol. 2, p. 1.)

It has also been held, with reference to this particular title, that the Alcalde was clothed with authority to extend it, to the interested party, and that he must determine how and when he had done so; and that, though he ought not to have extended more than one title on the same concession, if he did do so, it would be only an erroneous exercise of authority, and therefore not void. Hanrick v. Jackson, 55 Texas, 17, In the case now before us, the appellee contends, not that the title was erroneously or fraudulently issued, by the alcalde, Lesassir, but that it was not issued at all, to Rafael de Aguirre, or by virtue of the concession to him.

It was shown by the evidence of appellee, that at the instance of the same attorney, two final titles were extended to Rafael de Aguirre to separate and district surveys, by virtue of the same concession, by the same alcalde, who was in both assisted by the same witness. The first title was for eleven leagues on the Brazos river, dated on the 4th day of October, A. D. 1833; and the second title for ten leagues on the San Gabriel creek (now in Williamson county), and one league on Cow bayou (now in Falls county) dated on the 22d day of October, A. D. 1833, or eighteen days later than the first. The last title was all in the hand-writing of Samuel M. Williams (except the last four words of the emendation clause). He was one of the company of Austin and Williams, emprossarios. He acted for Rafael de Aguirre, under an irrevocable power of attorney to himself with authority to sell, an instrument which is held by our courts to be an indefeasable conveyance. He applied on the same day—October 4, A. D. 1833—in *separate* applications for titles of possession to each of the eleven league grants, stating that one survey was on the Brazos river, and the other on San Gabriel creek and Cow bayou. On that day juridicial possession was delivered to him as attorney, and final title extended at his instance to Rafael de Aguirre, to the eleven leagues of laud on the Brazos river. The title involved in this suit appears to have been extended eighteen days afterwards.

The appellee insists that the alcalde did not extend both titles to Aguerre; but that the final title, which now appears to have been extended to him, to the second eleven league grant, which he was not entitled to, was in fact extended to Perfecto Valdez. In further

support of his theory, he introduced the original application of Perfecto Valdez for a concession of eleven leagues of land, bearing date July 10, A. D. 1830; the concessions to him bearing date July 13, A. D. 1830; the consent of the emprassarios, Austin and Williams, to the location of the survey within their colony; a copy of the field notes of the survey on Brazos river; and maps showing that it was located there. No final title appears to have been extended under this concession (unless the one in controversy was so issued), and no reason is apparent why it was not done.

It was shown by photographic copies, and by the testimony of General DeBray, Spanish clerk of the land office, that the original or matrix, of the final title in controversy, now in his custody, has been changed in some respects, since it was originally written, by erasures, substituted words, and interlineations. The material words erased or changed are, the date of the concessions to Perfecto Valdez, the locality of the land, and his name. In their stead were inserted the date of the Rafael de Aguirre concession the locality of the land, and his name. Without these erasures and alteration, it would have made a complete and perfect title to the Perfecto Valdez grant, and would have indicated that the alcalde, had proceeded regularly and faithfully in the discharge of his official duties; and that the parties, witnesses and alcalde did not engage in a fraudulent combination to violate the law, and swindle the government under which they lived. The title to the eleven league grant, situated on the Brazos river, which was extended to Rafael de Aguirre on the 4th day of October, A. D. 1833, appears to be regular, in strict conformity to the law, and free from suspicion. There is no evidence in the record, that this survey ever reverted to the government, or that the legal title is not now in the claimants under the concession by virtue of which the title issued.

The appellee also introduced a certified copy of a grant of eleven leagues to Miguael Rabago, for whom Samuel M. Williams was attorney. The field notes of this survey calls for the Rafail de Aguirre survey on the Brazos river, and the maps show that they are connected. The application of Williams to have this survey made, was dated Dec. 3rd, A. D. 1833, subsequent to the date of both titles to Rafael de Aguirre. In it he asks that the Rabago grant, be lo-"cated on the right bank of the Brazos river, adjoining and above "another tract of the same description, for Don Rafael de Aguirre."

The appellee also introduced a certified translated copy of the Rafail de Aguirre title, which was made in the year 1855; and a certified copy of the last page of the same title in Spanish, made in the year 1838; in neither of which is there an emendation clause, at the foot of the title, though the face of the title appeared then as it does now.

The appellant, Hanrick, offered evidence showing that the signatures of the alcalde, Luke Lesassier, and of the assisting witnesses Robert Peeples and C. C. Givens were genuine; that Lesassier usually signed his name about one inch below the last line of final titles extended by him, that in this title his name was about the usual distance from the last line of the emendation clause; that the emendation clause (except probably four words) were in the same handwriting as the body of the instrument, and appeared to have been written about the same time, and with the same kind of ink, though probably with a different quill pen or the same pen newly sharpened; and that if this clause was obliterated, Lesassier's name would be about double the usual distance below the last line of the title. Col. F. M. Johnson, the surveyor general of Austin and Williamson colony, testified that he was seventy-nine years old; that he did not have his field book of surveys before him, but in its absence, he remembered, a survey of ten leagues of land on the San Gabriel and one league at some other place (where, he did not remember), made by him under the Rafael de Aguirre concession, in the year 1833. That the land was selected by Robert M. Williamson, as agent of Ed. Hanrick, who was associated with DeHaxey and a Mr. Ufford. That he knew of another eleven league survey made under the same concession on the Brazos river. It was made by William Moore, his deputy, and was selected by Samuel M. Williams.

It does not appear from the evidence that any of the parties, for whom Col. Johnson made the survey, had any interest in the grant prior to May 1, 1838; but it does appear that Samuel M. Williams, who selected the survey on the Brazos, was then the real owner. The evidence tends to show that final titles were sometimes signed by Luke Lesassier, alcalde, with blanks in them. The civil law was extremely strict in guarding against fraudulent alterations of public documents. The officers acting under it will be presumed to be

familiar with its requirements. The other titles extended by Lesassier show that he was familiar with the law, and generally conformed to it. To be authentic, the civil law required that a public document be clearly written, without blanks, erasures, obliterations, interlineations or corrections, especially in the substantial parts; or where corrections were made, they should be authenticated at the foot by the officer. And not only should the words substituted and validated be shown, but also the words abandoned and made void. Escriche's Dic. Leg. Ins. page 886–888. This rule was applicable not only to *testimonios*, but also to the *matrix* or protocol.

If one appears to be changed, or if suspicion is cast on it, by reason of erasures or interlineations, its verity may be shown by the production of the other. It is said :

"If the original copy or *testimonio* is in existence, the fact of the "reproduction or omission of words written or added, may assist to "ascertain whether the alterations was made before or after the "closing and signing of the principal document (or matrix), and "consequently it will be possible to decide whether there was fraud "or a mere omission." Id. page 888.

In this case it appears that the part of the *matrix* which would have made the Perfecto Valdez title complete, has been changed, so that there is no final title to that grant, but there are two final titles under the Rafael de Aguirre concession to separate eleven leagues. Notwithstanding this, and the further fact that the matrix of the title in controversy (which is claimed to be the second one to Aguirre on the same concession), is attacked as a forgery, the original copy or *testimonio*, is not produced. It is not shown to have ever existed, nor that it is lost or destroyed, nor is it otherwise accounted for. If it had been produced, and appeared not to be altered (and it probably would not have been, if it was a true copy of a genuine original), it would be conclusive that the matrix now attacked here, was altered before and not after the execution.

As early as the year 1838 the dues were paid to the Republic of Texas, and credited upon a certified copy of the title from the land office, and not upon a *testimonio*, as was customary. That Samuel M. Williams would apply to the alcade, L. Lesassier, for the extension of title and possession to two separate eleven league grants, on the same day, by virtue of the same concession for one only, in open violation of law, does not seem reasonable. And if he had done so,

that the officer of the government, assisted by the same two witnesses would grant it and extend title to both, seems less probable. That the owners of the Perfecto Valdez concession, would expend so much time and money in procuring a concession, and a survey under it for nearly fifty thousand acres of land, in a solid body. and abandon it when only a small effort and outlay was necessary to procure final title, is difficult to appreciate and realize in the absence of explanation. The alcalde, L. Lesassier, does not seem to have had any motive or interest in granting twenty-two leagues of land by virtue of a concession for eleven only. If Samuel M. Williams desired to procure two eleven league grants, by deception and fraud, on a concession for one, he must have known that it would surely and speedily have exposed him to have made applications for both on the same day. And yet the title papers appear to be signed by the proper officer. His signature is about the usual distance from the last line of the instrument attacked. The protocol was deposited in the land office, probably in its present condition, in so far as the body of the instrument is concerned, at least forty years ago; and the claimants under it have paid taxes on it from time to time for more than a quarter of a century. There is very strong evidence to support the validity of the title, but the evidence that it is a forgery is no less strong and cogent. After a careful review and consideration of it, we all concur in the opinion, that the verdict is not manifestly against the preponderance of evidence, as it should be to justify us in setting it aside, but that it is fairly supported by it. G., H. & S. A. R'y. Co. v. Bracken, 59 Texas, R. 71; 59 Texas, R. 124; 59 Texas, 577; Tapp v. Michaels, 58 Texas, R. 270; Willis v. Lewis, 28 Texas, R. 191.

It is urged by the appellant that it is probable that the first grant of eleven leagues to Rafael de Aguirre, situated on the Brazos river, was abandoned and not perfected. Our statutes (act of may 13, 1846, Pas. Dig. Art. 3715), made certified copies of all records of the land office *prima facia* evidence in all cases where the originals would be evidence, and the original of the Rafael de Aguirre title of October 4, 1833, is regular in every respect and deposited in the proper office. The evidence of its existence is undisputed, and there is none against it. Under the Mexican law, as under the Common law, an estate granted by the government can not afterwards be divested upon mere surmise or suggestion. A formal conveyance or

a regular proceeding is requisite. Dykes v. Miller, 25 Texas, Sup. 289 ; Smith v. Shackleford, 9 Danar. 452 ; Robi v. Sedwick, 35 Barb., N. Y., 329 ; Ferris v. Coover, 10 Cal. Rep. 617 ; Montgomery v. Bevans, 1 Sawyer, C. C. Rep.

If it be contended that the first grant may be regarded as abandoned, because the evidence does not show that a *testimonio* ever issued, the same may be said of the last grant. But where a matrix is formal and is deposited in the proper custody, the presumption will be indulged that a *testimonio* was issued as it should have been " to serve the grantee for a title." Art. 8 of Instructions to Commissioners of Degree, of Sept. 4, 1827 ; Laws of C. & Tex. 70 ; Pas. Dig., Art. 618 ; Titus v. Kimbrough, 8 Texas, 218.

The appellant assigns as error the admission in evidence over his objection, of the pre-emption papers of the appellee, Dood, to 160 acres of the land in controversy. While it is true that if plaintiff's title was a forgery, possession either under a claim of right or as a trespasser would be sufficient to defeat a recovery, yet it was proper to permit the occupant to show the character of his possession, and the amount of land he actually claimed and occupied, and particularly in view of the claim by appellant for damages for use and occupation. If the title was not a forgery, the land was not subject to pre-emption, and the location and survey would be no evidence of title. Clark v. Smith, 58 Texas, 275 ; Buford v. Butterwick, 58 Texas, 63 ; Sutton v. Carabojal, 28 Texas, 500.

The appellant assigns as error, the admission in evidence of the title to Miguel Rabago; the title to the Rafael de Aguirre on the Brazos river; the title to Thomas de La Vega on the Brazos river; the title in part to Perfecto Valdez on the Brazos river; and the admission of sketches and maps from the general land office, and other evidence of like character. We are of opinion that all this evidence was properly admitted, to be considered by the jury in connection with the other facts and circumstances relating to the issue of forgery, which could only be established, if at all, by circumstantial evidence. (Hanrick v. Cavanaugh, 2 Texas Law Rep., 158; Rev. Stat., Art, 2253-2259 and 3808; Hill v. Nisbet, 58 Ga., 589; Robinson v. Meyers, 67 Penn., 9).

The appellant also assigns as error the refusal of the court to admit in evidence, the correspondence had in the year 1840, between J. P. Borden, Commissioner of the General Land Office, and James

Howlett, a public surveyor. It was offered as tending to show that the eleven leagues grant on the Brazos river, the first one extended to Rafael de Aguirre, had been abandoned. We think the evidence was properly excluded. It was hearsay. If it had not been, a title which had vested could not be divested by a mere declaration of abandonment. (H. & T. C. R. R. Co. v. McGehee, 49 Texas R. 489; Hanrick p. Cavanaugh, 2 Texas Law Rep. 58, and authorities hereinbefore cited.)

The appellant insists that the court erred in excluding, as evidence, a copy of judgment, wherein Joseph Ufford was plaintiff, and John Dyches et. al. were defendants, rendered in the year 1855, by the United States court, at Galveston, Texas. It did not appear therefrom or otherwise; that the appellee was a party to the suit, or in privity with any one who was, nor that the title in controversy in this suit was involved in that suit, and it was properly excluded. (Dixon v. Ladec, 57 Tex., 531, and authorities cited.

The special charges requested, which were given were very properly given, and those refused had either been incorporated in the main charges or were upon the weight of evidence, or did not contain correct legal proposition.

There remains but one other question, which we deem necessary to consider. It was urged with great earnestness and ability. It is contended that sec. 2, art. 14, of the constitution of 1875, of Texas, prohibited appellee from preempting any part of the land included within the ten leagues on the San Gabriel, because there was evidence in the county records and in the general land office, that it had been appropriated. The clause of the constitution relied on to sustain this view, reads as follows: "All genuine land certificates "heretofore or hereafter issued shall be located, surveyed, or patent- "ed only upon vacant and unappropriated public domain; and not "upon any land titled or equitably owned under color of title from "the sovereignty of the state, evidence of the appropriation of which "is on the county records or in the general land office; or when the "appropriation is evidenced by the occupation of the owner or of some person holding for him." The preemption was located before the adoption of this provision, as shown by the evidence. If this is not true and assuming that preemptions are intended to be included, (though not specified) we think this rule or prohibition, can only be invoked in favor of those who have either a legal or equi-

table title or claim. A forged title would not be of either class. Surely it was not intended to sanctify and validate forgery perpetrated against the government. The latter part of the section, relating to the evidence of appropriation, is not intended to provide, that such appropriation shall be conclusive evidence of title; but rather that if title exists, evidence of the facts mentioned, shall be evidence of notice to owners of subsequent locations, and will preclude them from making any defense, where good faith and want of notice would be required.

We find no error, for which the judgment should be reversed, and it will be affirmed.