### ROSS v. SUTTER. (No. 6191.)

(Court of Civil Appeals of Texas. Austin. April 21, 1920.)

1. Evidence ⬅⟳343(1) — Original duplicate copy of testimonio admissible as original instrument.

An original or duplicate copy of a testimonio or protocol of title to land was an original instrument, and was admissible in evidence.

2. Evidence ⬅⟳335(1)—Testimonio to Mexican land not archive of land office.

An original duplicate copy of a testimonio of Mexican land in Texas was the private property of the grantee or his assignee, and neither it nor a copy thereof became an archive of the land office, by reason of its being filed in such office.

3. Adverse possession ⬅⟳104—Grant presumed after continued possession.

Long-continued possession of land under a claim of ownership, varying in length of time according to circumstances, is sufficient as a basis for presuming that a grant has been issued by the government.

4. Trespass to try title ⬅⟳41(1) — Finding of grant of land by government sustained, by evidence.

In an action involving title to land, evidence *held* sufficient to warrant a finding that person through whom plaintiff was claiming had a grant from the states of Coahuila and Texas, so that it was immaterial that a testimonio in evidence was inadmissible to sustain such finding.

5. Evidence ⬅⟳353(11)—Statute inapplicable to prior executed instrument.

Rev. St. 1911, art. 6826, relating to record of instruments, has no application to the introduction in evidence of an instrument in writing executed long prior to the adoption of the statute.

6. Evidence ⬅⟳353(8)—Power of attorney in Spanish admissible.

A power of attorney was admissible in evidence although in the Spanish language.

7. Evidence ⬅⟳158(26)—Parol evidence of demise of subordinate lodge admissible.

Court did not err in permitting witness to testify as to the demise of a subordinate lodge; there being nothing to indicate that it was demised by formal resolution, or that any minutes or memoranda of such demise was ever made.

8. Evidence ⬅⟳22(2) — Judicial notice that lodges are not always formally demised.

Judicial cognizance will be taken of the fact that subordinate lodges usually demise by failure of their members to attend, and their failure to comply with regulations of the Grand Lodge under which they hold their charters, and that usually no minutes are kept of the demise.

⬅⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**9. Corporations** ☞432(3)—**Officer executing deed presumed authorized.**

Where a deed from a corporation is offered in evidence, purporting to be signed by its proper executive officer, under the seal of the corporation, it will be presumed that such person was such officer, and that he was duly authorized to execute such deed, where nothing appears in the evidence to the contrary.

**10. Adverse possession** ☞104—**Finding of record title on presumed grant proper.**

A grant from the government being shown by presumption, and plaintiff having connected himself by a perfect chain of title with such grantee, the court did not err in finding for plaintiff upon the ground that he had record title to the land.

**11. Adverse possession** ☞114(1) — **Evidence sufficient to show title under ten-year statute.**

In action to recover land, evidence *held* sufficient to sustain a finding in favor of plaintiff under the ten-year statute of limitations.

Appeal from District Court, Robertson County; W. C. Davis, Judge.

Action by A. G. Sutter, by next friend, against Herbert Ross. Judgment for plaintiff, and defendant appeals. Affirmed.

### Findings of Fact.

JENKINS, J. Appellee brought this suit to recover an acre of land described in his petition, and alleged to be part of the ·Marquez Eleven·League grant, situated in Robertson county. He alleged that he was the owner in fee simple of the land described in his petition, and also that he held title to the same under the three, five, and ten year statutes of limitation.

Appellant filed a general denial and plea of not guilty. The court filed the following findings of fact:

"(1) I find that Coahuila and Texas granted to Maria de la Conception Marquez 11 leagues of land, situated in the northeastern portion of Robertson county, Tex., and that a copy of said grant from the general land office of Texas was recorded in the Deed Records of Robertson County, on July 16, A. D. 1852, in Book J, pages 28, 29.

"(2) I find that Maria de la Conception Marquez executed to M. M. Chabert a power of attorney, with power of substitution, to convey said 11 leagues of land, and that same was recorded in the Deed Records of Robertson County on the 24th day of July, A. D. 1852, in Book J. pages 23–28.

"(3) I find that said M. M. Chabert executed to James Treat a certain instrument of substitution, as authorized in said power of attorney, giving the latter power and authority to convey said 11 leagues of land, which instrument was recorded in the Deed Records of Robertson County on the 9th day of August, A. D. 1852, in Book J, page 40 et seq.

"(4) I find that said James Treat, acting un- der said power of attorney, conveyed said 11 leagues in fee simple to James Fortune. and that said deed of conveyance was recorded in the Deed Records of Robertson County on the 15th day of August, 1838, in Book T, page 45 et seq.

"(5) I find that James Fortune conveyed the said 11 leagues of land to James Morgan in fee simple by an instrument dated the 9th day of April, 1845, and recorded in the Deed Records of Robertson County on the 23d day of July, 1845, in Book D, page 358 et seq.

"(6) I find that James Morgan conveyed the said Marquez 11 leagues of land in fee simple to Alexander H. Dana by deed dated November 2, 1848, and recorded in .the Deed Records of Robertson County, on the 8th day of October, 1849, in Book P, page 18 et seq.

"(7) I find that A. H. Dana recovered a judgment in the United States District Court for the District of Texas, sitting at Austin, at the November term, A. D. 1853, against C. C. Owens, in which the said entire Marquez 11 leagues of land and the title to same in fee simple was vested in the said A. H. Dana, and divested out of the said C. C. Owens, and that said judgment was recorded in the Deed Records of Robertson County on the 7th day of February, 1854, in Book L, page 345 et seq.

"(8) I find that the Navasota Association passed certain resolutions wherein it is declared that Alexander H. Dana and Marcena Munson, Esqs., were entitled to be paid 25 per cent. of all the lands of said association in Texas, in consideration of their making advances in money necessary to pay taxes and quiet and perfect title, the said A. H. Dana to have 18,-000 acres of said lands, and said Marcena Munson to have 4,000 acres of said land, which said resolutions were recorded in the Deed Records of Robertson County, on the 17th day of November, 1854, in Book J, page 115 et seq.

"(9) I find that said Marquez 11 leagues of land was partitioned by, between, and among Alexander H. Dana, Marcena Munson, and others, by decree of partition in which fractional section 3 was allotted to Marcena Munson, dated September 1, 1855, recorded in the Deed Records of Robertson County, on the 1st day of September, 1855.

"(10) I find that Eliza Munson, the surviving widow of Marcena Munson, deceased, and the surviving wife of the said Marcena Munson, being all of his heirs at law, executed a power of attorney to J. W. Lawrence, authorizing him to make contract or deed of conveyance of 61 acres out of fractional section 3 of said Marquez 11 leagues to John H. Henderson, recorded on the 1st day of October, 1874, in the Deed Records of Robertson County, in Book 22, page 374 et seq.

"(11) I find that Eliza Munson and others, being all the heirs at law of Marcena Munson, deceased, conveyed by warranty deed 61 acres of land, a part of fractional section 3 of the Marquez 11 leagues to John H. Henderson, by deed dated the 19th day of November, A. D. 1873, which was recorded in the Deed Records of Robertson County, on the 17th day of June, 1874, in Book X, page 206 et seq.

"(12) I find that John H. Henderson, in consideration of the favorable opinion of Bald

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Prairie Lodge, A. F. & A. M., No. 387, conveyed one square acre of land out of the northwest corner of said 61-acre tract to said Bald Prairie Lodge A. F. & A. M. No. 387, being the one acre of land in controversy, by warranty deed dated February 26, A. D. 1876, and that said deed was duly recorded in the Deed Records of Robertson County on the 11th day of March, 1895, in Book 32, pages 60, 61.

"(13) I find that the Bald Prairie Lodge, A. F. & A. M., No. 387, demised on and about the —— day of ——, 1914 or 1915, without selling or otherwise disposing of the property now involved in this suit, and that the property reverted to the Grand Lodge by Legislative Act, S. B. No. 141, Sixteenth Legislature.

"(14) I find that the Grand Lodge of Texas, A. F. & A. M., duly authorized thereunto, and by its proper officers, conveyed the property described in plaintiff's petition to J. T. Milstead, by deed dated 25th day of February, 1918, recorded in the Deed Records of Robertson county, volume 68, page 306.

"(15) I find that J. T. Milstead and wife deeded the property in controversy to W. A. Sutter, by warranty deed dated July 1, 1918, recorded in the Deed Records of Robertson County, volume 68, page 358.

"(16) I find that W. A. Sutter conveyed the property in controversy to A. G. Sutter by deed dated October 16, 1918, and recorded in the Deed Records of Robertson County, Book 69, page 22.

"(17) I find that A. G. Sutter is a minor, 18 years old, and without lawful guardian, and that W. A. Sutter is the father of said A. G. Sutter.

"(18) I further find as a fact that said Bald Prairie Lodge, No. 387, A. F. & A. M., constructed its lodge building on said property immediately after the acquisition of same by deed, and continued to meet as a lodge in said building, use and occupy and enjoy the same, under a claim of right, and adversely to defendant and to the world, openly and notoriously, for a period of more than 10 years, to wit, for a period of about 36 years, prior to the time defendant entered upon a portion of same.

"(19) I further find that defendant, Herbert Ross, entered upon said premises in the year 1912, and has been using only a portion of said premises continuously since said date.

"(20) I further find as a fact that plaintiff and his grantors have never at any time been out of possession, or out of the use, occupancy, and enjoyment of a portion of said property."

The case was tried before the court without a jury and judgment rendered for appellee.

## Opinion.

[1] Appellant's first assignment of error is as follows:

"The court erred in admitting in evidence and considering, over objection of defendant, a copy of a duplicate copy of a testimonio from the state of Coahuila and Texas to Maria de la Conception Marquez of 11 leagues of land, for the reason that a copy of a duplicate copy of an instrument is not admissible in evidence, and for the further reason that it was not shown that the copy was certified to nor was it an archive of the state."

Under this assignment appellant submits the following proposition:

"A second copy of a title or testimonio which is delivered to a party to serve him as title is not an archive of the land office, and a certified copy thereof is not admissible in evidence."

Under the laws of Spain and Mexico, the successive steps by which a party acquired title to public land were substantially as follows: A party desiring to obtain public land applied to the proper officer for the same. The officer granted the request, and issued an order, directed to a public surveyor, to survey the land selected by the applicant. This surveyor surveyed the land, and returned the field notes to the proper officer, who approved the same, and issued an order to put the applicant in possession of the land. These papers remained in the proper office, and are known as the protocol.

The evidence of the applicant's title was a certified copy of these papers, known as the testimonio, which was equivalent to a patent under our laws. It was an original instrument, and was admissible in evidence, the same as would be a patent or a deed under our laws. Titus v. Kimbro, 8 Tex. 222.

It appears from the record in this case that the proper testimonio was issued to the grantee, who thereafter applied to the proper officer for a duplicate original of such testimonio, and the same was delivered to the grantee. Such duplicate original was permissible under the laws of Mexico, and would be admissible in evidence where the original testimonio would have been admissible. Paschal v. Prez, 7 Tex. 359, 360; Smith v. Townsend, Dall. Dig. 572; Herndon v. Casiano, 7 Tex. 332.

[2] The original testimonio appears to have been issued January 18, 1834, and the original duplicate referred to was issued on May 26, 1836. It appears from the record that the duplicate original testimonio referred to was presented to the land commissioner of this state September 10, 1838, who made a certified copy of the same, and filed such copy in the land office, and thereafter, on the 2d of February, 1852, an English translation of the same, made by the official translator, was also filed in the land office, and that the original duplicate testimonio was returned to the owner thereof. A certified copy of the copy in the land office, together with the English translation thereof, were recorded in the deed records of Robertson county July 16, 1852. The testimonio was the private property of the grantee or his assignee, and neither it nor a copy thereof became an archive of the land office by reason of its being filed in said office. Paschal v. Perez, supra; Hatchett v. Conner, 30 Tex. 109; Wood v. Welder,

42 Tex. 396; State v. Cardinas, 47 Tex. 281; Titus v. Kimbro, supra; King v. Elson, 30 Tex. 246; Hutchins v. Bacon, 46 Tex. 408; Hanrick v. Dodd, 62 Tex. 75; Hanrick v. Cavanaugh, 60 Tex. 1.

[3] It is, however, immaterial in this case that the grant was not proven by the testimonio, for the reason that under the facts of this case a grant will be presumed. Long-continued possession of land under a claim of ownership, varying in length of time according to the circumstances, is sufficient as a basis for presuming that a grant has been issued. Herndon v. Casiano, supra; Lewis v. San Antonio, 7 Tex. 302–309; Paschal v. Perez, supra; Sheppard v. Harrison, 54 Tex. 96; Von Rosenberg v. Haynes, 85 Tex. 357, 20 S. W. 143; Railway v. Uribe, 85 Tex. 386, 20 S. W. 153; State v. Bruni, 37 Tex. Civ. App. 2, 83 S. W. 209.

[4] In addition to long-continued possession, the corroborative facts in the instant case are that the copy of the testimonio above referred to was recorded in Robertson county 68 years ago, which copy recited the issuance of the testimonio. Also a power of attorney from the grantee to M. M. Chabert, and a power of attorney from said Chabert substituting James Treat were recorded in said county in 1852. Each of said powers of attorney properly described the 11-league grant, and recited the fact that the same was granted to M. Marquez, giving the date of the issuance of the testimonio.

This evidence being sufficient to sustain the finding of the court that the grant was issued to M. Marquez, it is immaterial that the testimonio was not admissible in evidence for the purpose of sustaining such finding.

Appellant's second assignment of error is as to the admission in evidence, over the objection of the defendant, of the power of attorney from Maria de la Conception Marquez to M. M. Chabert; the objection to the same being that it was not in the English language, and not accompanied by a correct translation of the same, duly authenticated and sworn to.

[5, 6] This objection is without merit. Article 6826, Revised Statutes, cited by appellant, has reference to the record of instruments. This is a recent statute, and has no application to the introduction of an instrument in writing, executed long prior to the adoption of such statute. The power of attorney was in the Spanish language, which was the language of the country in which the land was situated at the time this power of attorney was executed. We know of no rule of evidence which forbids the introduction in evidence of a power of attorney for the reason that it is not in the English language. Presumably the court understood the Spanish language, and, if he did not, he could call to his aid an interpreter, in order to intelligently read the same.

The third assignment of error is substantially the same as the second.

[7, 8] Appellant's fourth assignment relates to the admission of the testimony of R. M. Cole, W. H. Browning, and J. T. Milstead, who testified that the Bald Prairie Lodge, A. F. & A. M., No. 387, demised in 1914 or 1915; the objection to said testimony being that it was not the best evidence. The parties mentioned testified that they were members of the Bald Prairie Lodge, and knew as a fact that it did demise at the time stated by them. In addition to this, Geo. Brown, a witness for appellant, testified to such demise without objection.

One link in appellee's title was a deed from the Grand Lodge, A. F. & A. M., of this state, which could not have conveyed title but for the fact that Bald Prairie Lodge referred to had demised prior to the execution of said deed. Appellant submits the proposition that the minutes and proceedings of corporate bodies cannot be shown by parol testimony, unless it be shown that the records of such proceedings are lost or destroyed.

There was no attempt to show the demise of said lodge from the minutes of that body. There is nothing to indicate that the lodge demised by formal resolution, or that any minutes or memoranda of such demise were ever made. We take judicial cognizance of the fact that subordinate lodges usually demise by failure of their members to attend and their failure to comply with regulations of the Grand Lodge under which they hold their charters. In such case, of course, there would be no minutes showing such demise. There was no error in admitting the testimony complained of.

Appellant's fifth assignment complains of the admission of a deed from the Grand Lodge of Texas, A. F. & A. M., signed by John D. Arnold, as Grand Master, and attested by W. D. Pearson, Grand Secretary, under the seal of said Grand Lodge. Appellant's proposition is that a deed from a corporation, purporting to be signed by its chief executive officer and secretary, is not admissible in evidence without proof of the official character of the party signing same, and without proof from the minutes of the corporation that such officer was authorized to execute the deed.

[9] Where a deed from a corporation is offered in evidence, purporting to be signed by its proper executive officer, under the seal of the corporation, it will be presumed that such person was such officer, and that he was duly authorized to execute such deed, where nothing appears in evidence to the contrary. New England Co. v. Electric Co., 84 Me. 284, 24 Atl. 848; Gorder v. Canning

Co., 36 Neb. 548, 54 N. W. 830; Manhattan v. Phalen, 128 Pa. 110, 18 Atl. 429; 10 Cyc. p. 1003; Railway v. Davis, 93 Tex. 378, 54 S. W. 384, 55 S. W. 562.

The statute of this state provides that the Grand Lodge of Ancient Free and Accepted Masons and other similar lodges may acquire and hold lands (Revised Statutes, art. 1217); also that upon the demise of any subordinate body all the property belonging to the same shall pass to and vest in the Grand Lodge. Article 1217 makes the presiding officer of the Grand Lodge the proper party to sign deeds to its property, attested by the secretary and the seal of the lodge.

[10] It will be seen by reference to the findings of fact that, in addition to finding that appellee had a perfect paper title to the land, the court also found that he had title under the three-year statute of limitation, and also under the ten-year statute. The grant from the government being shown by presumption, as hereinabove stated, the appellee having connected himself by a perfect chain of title with such grantee, the court did not err in finding for appellee upon the ground that he had the record title to the land in controversy.

[11] The evidence is sufficient to sustain the finding of the court as to the ten-year statute of limitation. A deed to the land in controversy to Bald Prairie Lodge was executed on the 26th day of February, 1876, properly describing the land in controversy. The lodge took possession of the land under this deed, and built a lodge room thereon soon after its execution. There appears to have been, no interruption of the possession of this land by the lodge until 1883, at which time Josh Rains, who we presume from the record owned the adjoining land, built a barn and some pens encroaching upon this acre of land, but he built the same with the permission of the lodge, and with the distinct understanding that he did not claim the land, but was holding the same as tenant at will of the lodge. He continued to hold the same for a period of 6 years. It thus appears that the lodge was in actual possession of the land in controversy for a period of at least 13 years. The finding of the court is to the effect that assignees of Rains, who continued to use the barn and lot, were not claiming adversely, and if this is true the appellee and those under whom he claims held possession of the land for a period of about 36 years prior to the institution of this suit, and the court so found. We cannot say that the testimony is not sufficient to sustain this finding of the court. It is at least sufficient, and in fact is undisputed, that such possession continued for a period of at least 13 years, which is sufficient to perfect title under the 10-year statute of limitation.

Finding no error of record, the judgment of the trial court for each of the reasons stated herein is affirmed.

Affirmed.