# Greenleve, Block & Co. v. L. & H. Blum.

(Case No. 1394.)

1. **Fraud — Debtor and creditor.**— A creditor may, if he acts *bona fide* and with the sole purpose of securing his debt, receive property from an insolvent debtor in payment of a debt due, if the transfer be openly made, and no more property is taken than may be reasonably required to discharge the debt; and this although the creditor may know at the time of the transfer that he will prevent other creditors from enforcing their claims, and that the debtor is prompted in making such preference payment by motives of friendship.

2. **Purchaser — Fraud.**— If, however, one not a creditor should purchase the property of an insolvent debtor, with a knowledge that the debtor intended by the sale to place the property beyond the reach of his creditors, such purchaser would not be protected as against the creditors of the insolvent, though he may have paid an adequate consideration.

3. **Practice — New trial.**— Mere preponderance of evidence against a verdict will not be sufficient in the supreme court to authorize the reversal of a judgment entered thereon. Thus, where fraud was charged, and there was evidence tending to establish it, a verdict which in effect determined its existence was not disturbed, though direct evidence negatived the fraudulent intent.

4. **Fraud.**— If the agent of a creditor receives from an insolvent debtor goods in payment of his debt, with the secret understanding between the agent of the creditor and the debtor, that from future sales of the goods the creditor shall receive all money in excess of the amount of the debt, with a view of hindering and delaying other creditors, such payment would be void as to such other creditors, though the creditor thus receiving payment may not in fact have known of the fraudulent intent. The act of the agent in negotiating the settlement must be deemed in law the act of his principal.

Appeal from Milam. Tried below before the Hon. W. E. Collard.

Leon & H. Blum brought suit against W. E. Easterwood, and sued out an attachment which was levied on a stock of merchandise amounting to $1,617.66.

Le Gierse & Co. and Greenleve, Block & Co., by L. C. Michael, made claimant's oath and gave bond under the statute to try the right of property.

L. & H. Blum tendered the issue that defendants, Le Gierse & Co. and Greenleve, Block & Co., claimed the goods by transfer from W. E. Easterwood, and that said transfer was made with intent to hinder, delay and defraud the creditors of Easterwood; that defendants knew of this and colluded with Easterwood, and that the goods were subject to the levy.

Defendants alleged that they claimed the goods by a transfer from Mrs. M. H. Newman and from W. E. Easterwood to them; that Easterwood did business in the name of Mrs. M. H. Newman, and plaintiffs knew and acquiesced in this fact; that the transfer

was made to pay a pre-existing debt due from Easterwood to defendants of $5,200; that the goods were not worth more than $5,200; that they accepted the transfer in good faith, without any knowledge of or participation in any fraud on the part of Mrs. Newman or Easterwood; that it was absolute, without any reservation or benefit to any one.

The sheriff who made the levy valued the goods at $7,653.19.

Judgment that the property was subject to the levy, and that it was transferred by Easterwood to defendants nominally in satisfaction of the claims of defendants, but in fact that there was a private understanding between Easterwood and the agents of defendants, that the excess in value or proceeds of goods over the debts of defendants should be returned to Easterwood, or that there was a secret trade for the benefit of Easterwood, and to hinder, delay and defraud the other creditors of Easterwood; that the property conveyed was worth $1,000 more than the debts due by Easterwood to defendants; that the transfer was fraudulent and void, and that defendants had notice of the fraudulent nature of the transfer at the time it was made.

Easterwood testified, among other things, as follows: " From all that was said, and while we were there in the store and at the hotel, it was my understanding that if the goods sold by me to Greenleve, Block & Co. and Le Gierse & Co. should be sold for more than the amount that I owed them, then I was to get the surplus; and I also understood that the houses would be willing to allow me to make a settlement with my creditors. Of course, if I had not expected the benefit, I should not have traded with them. There was no price agreed upon that the goods should be taken at. They were to take all the goods for their debts, and if they sold for more than I owed them, it was my understanding that I was to have the surplus; and in a conversation at the hotel, Burchard (the agent who negotiated the settlement and transfer to Le Gierse & Co.) told me that the houses would pay me any surplus that there might be after paying their debts, and I expected them to do it."

*H. D. & F. H. Prendergast*, for appellant, cited Banfield *v.* Whipple, 14 Ala., 13; Gray *v.* St. John, 35 Ill., 223; Walden *v.* Murdock, 23 Cal., 551; Young *v.* Dumas, 39 Ala., 60; Chase *v.* Walters, 28 Iowa, 460; Bears' Estate, 60 Penn., 430; Crawford *v.* Austin, 34 Md., 51; Ford *v.* Williams, 3 B. Mon., 557; Gregory *v.* Harrington, 33 Vt., 241; Brown *v.* Smith, 7 B. Mon., 364; Cureton *v.* Doby, 10 Rich. (S. C.) Eq., 414; Bump on Fraud. Con., 186–188.

*McLemore & Campbell*, also for appellant, cited, in addition, Wright *v*. Linn., 16 Tex., 42; Howerton *v*. Holt, 23 Tex., 59; Baldwin *v*. Peet, 22 Tex., 716, 717; Hunt *v*. Butterworth, 21 Tex., 138; Leitah *v*. Hollister, 4 Comst., 211; Heidenheimer Bros. *v*. J. D. Braman, MSS. Sup. Ct. Texas, January, 1882; Shirras *v*. Caig, 7 Cranch, 34.

*Scott & Levi*, for appellees, cited Moseley *v*. Gainer, 10 Tex., 395; Edrington *v*. Rogers, 15 Tex., 188; Hancock *v*. Horan, 15 Tex., 510; Linn *v*. Wright, 18 Tex., 318; Humphries *v*. Freeman, 22 Tex., 45; Garahy *v*. Bayley & Co., 25 Tex. Sup., 295; Weisiger *v*. Chisholm, 28 Tex., 780; Weisiger *v*. Chisholm, 22 Tex., 725; Hughes *v*. Roper, 42 Tex., 116; Peiser *v*. Peticolas, 50 Tex., 638; Edmundson *v*. Silliman, 50 Tex., 106.; Van Bibber *v*. Mathis, 52 Tex., 409; Cox *v*. Miller, 54 Tex., 27; Van Hook *v*. Walton, 28 Tex., 59; Twyne's Case, 1 Smith's Lead. Cas.; Bryant *v*. Kelton, 1 Tex., 419.

STAYTON, ASSOCIATE JUSTICE.— This cause was before this court at the last term and an opinion was given reversing and remanding the cause. A motion for rehearing was filed and granted.

The motion was based upon the grounds:

1st. That the court was in error in regard to the law of the case.

2d. That the evidence in the court below was sufficient to support the finding.

It was contended on the former argument of the cause, as at the present term, that the fact that the appellants were *bona fide* creditors of Easterwood would not protect them in a purchase of goods to pay their respective debts, unless the facts attending the purchase would have protected a purchaser not a creditor; this proposition was not at the former hearing, and is not now, recognized as the law.

The right of a creditor to receive property from an insolvent debtor in payment of a debt due to him, if the same be openly done, and more property is not taken than is reasonably necessary to pay the debt, although the creditor may know at the time he so receives the property that he will thereby prevent other creditors from enforcing their claims, and although the creditor may know that the debtor is prompted to give to him the preference through motives of friendship, is recognized; such reception of property, however, must be *bona fide*, *i. e.*, for the sole purpose of securing the debt, and not with intent to cover up any part of the property or its proceeds for the benefit of the debtor to the prejudice of other creditors. 15 Tex., 188, 506.

A purchaser not a creditor who should buy the property of a debtor, however adequate might be the consideration which he paid, with a knowledge that it was the intention of the debtor by the sale to put the property beyond the reach of his creditors, would be a *mala fide* purchaser and entitled to no protection as against creditors.

The rehearing was granted under the belief that perhaps too rigid and literal a construction had been placed upon the facts, and that due weight had not been given to the circumstances; and that this induced the holding that the evidence was not sufficient to sustain the finding of the court below.

Neither the finding of a court nor of a jury will be set aside if there be evidence to support it, although this court may be of the opinion that the preponderance of the evidence tends to a different conclusion. The reasons for this rule have been so often stated that a repetition of them now is unnecessary.

The question in this case was as to whether or not the conveyances were made with intent which the law deems fraudulent. The court below held that there was a secret understanding between the agents of the appellants and Easterwood, that the excess, over the debts due to the appellants, of the proceeds of the goods, should be held for Easterwood, or that there was a secret trade for his benefit, and this with intent to hinder, delay and defraud his other creditors. If this was true, the conveyances were void as to his other creditors, even though the appellants may not have participated in the intent, for what their agents did in negotiating the transfers must be deemed, in law, their acts.

The evidence in this class of cases must come largely from the persons who are concerned in the transaction, and circumstances have to be looked to, and in many cases be given a weight to which they would not be entitled in a different class of cases.

In this case the circumstances under which the conveyances were made, coupled with the precedent business relationships of the parties, and the subsequent indication of willingness to restore the goods to Easterwood if he could make an advantageous settlement with his creditors, together with the fact that Easterwood evidently understood that he was to have an interest in the proceeds of the goods in the event there was more than sufficient to pay the debts due to the appellants, which may have been the result of contract between him and the agents of the appellants, or of acts intended and calculated to induce that belief, although this is denied, were evidence of such intent as the law declares will render the sales invalid.

It is true that the direct evidence negatives any wrongful intent, and there may in fact have been none; yet those were matters for the court below to consider in connection with all of the circumstances of the case.

One of the agents who negotiated the transfers did not testify upon the trial; what effect his failure so to do, in a case where all the facts should be fully shown, may have had in the determination of the case by the court below, we are unable to tell.

Without entering into a consideration of the testimony in detail, we are of the opinion, upon a review of the case, as we were when the rehearing was granted, that, in the former disposition of the case, due weight was not given to all the circumstances of the case which tended to show that the transaction was not what it professed to be from the direct testimony, and that there was evidence, the weight of which was for the determination of the court that tried the case, tending to show that the transfers were invalid; and in such case the disposition of the case made by the court below will not be disturbed.

The judgment is affirmed.

AFFIRMED.

[Opinion delivered March 13, 1883.]