WM. NUMSEN & SONS ET AL. v. L. A. & W. O. ELLIS.

(No. 1943.)

APPEAL from Galveston County.   Opinion by WHITE, P. J.

DAVIDSON & MINOR, SCOTT & LEVI, McLEMORE & CAMPBELL, counsel for appellants.

DENSON & BURNETT, WHEELER & RHODES, counsel for appellees.

§ **134.** *Motive; witness may testify as to his own, but not as to another's; error without prejudice is not reversible error; case stated.*   Appellees, on January 17, 1885, filed suit in the county court of Galveston county to recover of Wm. Numsen & Sons, the sureties on an indemnity bond and the constable, damages for the alleged wrongful seizure and conversion on December 24, 1884, of certain merchandise valued at $524.80.   The appellants answered first by general demurrer, secondly by plea of not guilty, thirdly by general denial, and fourthly, by a special plea that the goods were transferred by Ross & Russell on December 20, 1884, with intent to hinder, delay and defraud their creditors, among whom were Wm. Numsen & Sons, and that appellees had notice of such unlawful intent on the part of Ross & Russell; that on December 24, 1884, Wm. Numsen & Sons sued out and had levied on the merchandise in question a writ of attachment; that Wm. Numsen & Sons were required by the constable, in whose hands the writ of attachment was placed for execution, to give him an indemnity bond with two sureties and that H. A. Landes and W. Meininger signed said bond as such sureties, and that no otherwise than through this fraudulent conveyance did appellees have any title to said goods.

Appellees replied by supplemental petition, denying all fraud and notice of fraud, and alleging that they had

bought the goods, at the time of their seizure by the attachment, in good faith and for value paid.

The trial by jury on May 16, 1885, resulted in a verdict and judgment for appellees for $525 against Numsen &' Sons and the sureties on the indemnity bond and the constable. Appellants' motion for new trial being overruled, they appealed.

. The first error assigned is, that the court permitted plaintiffs to ask L. A. Ellis one of the plaintiffs who testified, what was his object and purpose in purchasing the stock of goods from Ross & Russell, and what, if he knew, was the object and purpose of the latter firm in making the sale. *Held,* ordinarily, a witness cannot be examined as to another's motives, but as to his own it is otherwise. As to his own, he is always open to examination. " When a party is examined as to his own conduct he may be asked as to his motive, his testimony to such motive being based not on inference, but on consciousness." [1 Whart. Ev. (2d ed.) §§ 482–508. 2 id. § 955; 2 W. Con. Rep. § 451.] Whilst it is clear that Ellis could testify as to his own, it was error to permit him to testify as to the motives and intentions of Ross & Russell. But such error is not of a character in this case, as renders the reversal of the judgment necessary. Error without prejudice is always considered harmless, and not ground for reversal. When the evidence in the case is considered, it will appear that appellants were not prejudiced by this testimony; because, the uncontradicted evidence of each of the parties, Ellis, Ross and Russell, each of whom testified individually, was, that the sale by Ross & Russell to L. A. Ellis, of their stock of goods, was for the purpose of paying a *bona fide* debt of about $8,000 due by Ross & Russell to Ellis, and also to pay other *bona fide* debts due other creditors by said Ross & Russell, and there was no evidence controverting the validity or good faith of any such indebtedness, or of the payment thereof by Ellis, the purchaser. This testimony more fully and clearly established the motives and intentions of

Ross & Russell than did the testimony of Ellis as to such motives and intentions, and being to the same effect and legitimate, it rendered immaterial the error of permitting Ellis to testify as to the motives of Ross & Russell in making said sale.

§ **135.** *Charge of the court; must be construed as a whole; transfer of property to creditor by debtor to pay a bona fide debt is valid; rules as to.* It is contended that as to the main question of law involved in the case, the charge of the court is radically erroneous. The first proposition complained of, as submitted by the court, is, that "if the jury believe from the evidence that the transfer to L. A. Ellis was made upon a valuable consideration, and for the purpose of paying a *bona fide* debt due Ellis, and the *bona fide* debts of a set of other creditors, and the purchase money was so applied, then you will find for the plaintiffs." Taken in connection with other portions of the charge we are unable to see any error in this particular paragraph. A charge should always be considered and construed as a whole, and not in isolated paragraphs. Under his contract of purchase, Ellis was to pay off his own claim amounting to some $8,000, and on the indebtedness of Ross & Russell to the Texas Banking and Insurance Company, the sum of $20,000, which he assumed to pay, and did pay, making the debt which was really due him at the time of the purchase, about $28,000. The rule is, that a creditor may, if he acts *bona fide*, and with the sole purpose of securing his debt, receive property in payment of a debt due, if the transfer be openly made, and no more property be taken than may reasonably be required to discharge the debt; and this, although the creditor may know at the time of the transfer that he will prevent other creditors from enforcing their claims, and that the debtor is prompted in making such preference payment by motives of friendship. A more stringent rule applies to a purchaser who is not a creditor. [2 W. Con. Rep. §§ 506, 507, 731; 59 Tex. 124; 62 Tex. 201.] In connection with the fore-

going instruction the court further charged the jury as follows: "The fact that a transfer of property has the effect of hindering or delaying creditors would not invalidate it if the transfer was made in good faith to pay preferred debts, and the purchase money was so applied. There is no legal fraud in a debtor in embarrassed circumstances transferring his property upon a valuable consideration for the purpose of paying *bona fide* debts." Objection is made to the latter sentence of this instruction. Taken in connection with the other portion of the charge it is unobjectionable, and is a pertinent presentation of the law directly applicable to the facts in the case. Our supreme court, in the case of Ellis v. Valentine & Co. which case grew out of the same identical transaction which produced this litigation, and involved most of the questions found in this record, say: "Every debtor has the legal right to pay one or more of his just debts with any money or property he has, though thereby he withdraws from the reach of other creditors property which they might subject to the payment of their debts equally just; as has every creditor the legal right so to receive payment, and the right of neither is affected by the fact that the debtor is insolvent. If for such a purpose the debtor conveys to a creditor property at a fair valuation, or sells to some other person for a fair price to raise money to pay debts, which by the terms of the sale the purchaser is bound to see, and does see, is at once appropriated to such purpose, then it cannot be said that the sale, within the meaning of the law, is made to hinder, delay or defraud creditors who may not receive the proceeds." . . . "To vitiate a sale, the intent of the seller must be to hinder, delay or defraud his creditors, and such intent cannot exist if the purpose be to appropriate the property or its proceeds to its fair value, to the payment of one or more just debts in a manner and time satisfactory to the creditors to be paid." [Gal. Term, 1886.]

**§ 136.** *Inadequacy of price in a sale; rule as to.*
Again it is insisted that the court erred in the following
instruction to the jury: "If Ellis bought the goods from
Ross & Russell, and Ross & Russell were insolvent at the
time, and the property was bought by Ellis for less than
its value, this would be a badge or circumstance of fraud.
But to invalidate a sale from inadequacy of price alone
the consideration must be so clearly below the market
value as to strike the understanding at once with the
conviction that such a sale could never have been made
in good faith; where circumstances exist raising a doubt
of the fairness of the transaction, then it would devolve
upon Ellis to prove payment of an adequate considera-
tion. If, however, the sale was made by Ross & Russell
for the purpose of meeting their liabilities and the pur-
chase money so applied, then the fact, if it be a fact, that
the goods were sold at a less price than they were actu-
ally worth, would not invalidate the sale unless the price
was so clearly below the market value or actual price as
to show that the sale could not have been made in good
faith." As we understand the law this instruction is
substantially correct. "A sale will not be disturbed for
mere inadequacy of price, unless the price obtained is so
grossly inadequate as to amount to a fraud or imposi-
tion." [5 Wait's Act. & Def. p. 533; Bump on Fraud.
Con. 44, 45.]

**§ 137.** *Sureties on indemnity bond; liability of in suit*
*against officer taking such bond.* It is insisted that the
court erred in rendering judgment against the sureties
on the indemnity bond given by Numsen & Sons to the
constable in order to get him to seize and levy upon the
goods under the writ of attachment. But for this bond
of indemnity, the probabilities are the goods would not
have been seized. It is provided by statute that "when-
ever a sheriff, constable, or a deputy of either, has been
sued for damages for any act done in their official char-
acter, and they have taken indemnifying bonds for such

acts so done by them, upon which said acts suits for damages are based, the said sheriffs, constables or their deputies, shall have the right to make the parties, principal and surety on such bond of indemnity, parties defendant in suit for damages, and the cause may be continued for the purpose of obtaining service on such parties so made in such case." [Gen. Laws, 19th Leg. p. 90.] The sureties, the indemnators, were the *causa causans*, inducing the officer to make the seizure of the goods, and to sell the same. And such seizure and sale were trespasses being wrongful. " All persons who direct or request another to commit a trespass are liable as cotrespassers." [Brandt on Suretyship, § 423; 2 W. Con. Rep. § 424.] Chapman v. Thomas, 62 Tex. 193, cited by counsel for appellants, does not controvert the rule above stated. It was, in that case, held that three or more distinct causes of action, arising upon as many separate and distinct indemnifying bonds could not be joined in one action, and this is the extent of the ruling in that case with regard to suits upon indemnity bonds.

March 3, 1886.                              Affirmed.