## T. R. ALLEN ET AL. V. J. C. CARPENTER.

(Case No. 5700.)

1. CONVEYANCE—PREFERRED CREDITORS—It is settled law in this state that a debtor in failing circumstances may prefer a creditor, and transfer to him property in payment of his debt. The transfer is valid, though the preferred creditor knew it would hinder and delay other creditors, provided the value of the goods conveyed was reasonably proportionate to the debt extinguished.
2. SAME—If a creditor purchases from his debtor goods exceeding in value the amount of his debt, and cancels the debt in part payment, and the sale is in all respects fair and honest, he will be protected like any other purchaser. The sale will not be upheld unless it is made under such circumstances as would validate it if made to any other purchaser.
3. CHARGE—FACTS—Every charge must be tested by the facts to which it is to be applied. (Cases compared.)
4. EVIDENCE—See facts for evidence held admissible.

APPEAL from Wise. Tried below before the Hon. F. E. Piner.

J. C. Carpenter, who was the plaintiff below, brought this suit in the county court of Wise county, against T. R. Allen, sheriff of that county, and Gus. Lewy & Co., a firm composed of Gus. Lewy and M. Lasker, for the value of a stock of saloon goods, levied on by a writ of attachment in favor of Gus. Lewy & Co. and against T. H. Cummins; Carpenter claimed that the goods belonged to him; alleged their value to be $900.00; and, also, claimed $100.00 as vindictive damages. Defendants answered by general denial, and specially, that on December 12, 1883, T. H. Cummins was in the saloon business in Decatur, Wise county, and was indebted to plaintiffs, Gus. Lewy & Co., in the sum of $489.38, and was largely indebted to other parties; that for several days prior to December 12, he had been running off to Dallas and other places large quantities of whiskies and other goods, for the purpose of defrauding his creditors, and that plaintiff knew these facts, and that the sale to Carpenter by Cummins was made for the purpose of defrauding his creditors; that the claim of Carpenter was simulated; that he paid nothing for the goods; that Cummins owed him nothing, but that he advised and assisted Cummins in the fraudulent disposal of his goods, and that, in fact, Cummins was the real owner of the stock which was levied on by the attachment in favor of Gus Lewy & Co., and that the goods were worth only $325.00. The county judge being disqualified, the case was transferred to the district court, where it was tried by jury, and verdict and judgment given in favor of Carpenter for $840.15.

Plaintiff introduced in evidence the following letter from T. H. Cummins for the purpose of showing the authority of his brother to execute the bill of sale to J. C Carpenter.

PARIS, TEXAS, December 8, 1883.

DEAR BROTHER :—I am still not able to be up or attend to business. Pay Carpenter what I owe him, and sell to him if you possibly can. It is the best thing I can do. The other party failed to come to time, etc.　　　　Your brother,

T. H. CUMMINS.

Defendants objected to its introduction, and the objection was overruled.

Mike Chambliss, a witness for plaintiff, testified that he had been in the saloon business for seven years, and knew the value of saloon goods in Decatur at the time of the levy. He was then asked what was the value of whiskey, wine, and other items contained in the petition; his answer was, that the price varied according to quality. He was then asked the reasonable value of each item of such goods as set forth in the bill of particulars; to which defendants objected, on the grounds that the witness had not shown that he was acquainted with the Cummins stock, nor that he was qualified to judge of its value. The objection was overruled.

*Crane, Sparkman & Trenchard*, for appellants.

*Lovejoy, Patterson & Graham*, for appellee, cited: Frazer *v.* Thatcher, 49 Tex., 26; Ingleheart *v.* P. J. Willis & Bro., 58 Tex., 306.

WILLIE, CHIEF JUSTICE —No assignment of error insisted on in this court questions the sufficiency of the evidence to show that Carpenter bought the goods in question from Cummins without knowledge of any intent on the part of the latter to defraud his creditors, or of facts that would have put him upon inquiry as to such intention. Indeed, it is not even assigned that the proof shows any intent on Cummins' part to defraud his other creditors by making the sale to Carpenter.

The objection is that the court, by its own charge, and by refusing charges asked by the appellants, held that a creditor might receive from an insolvent debtor, in payment of a debt, an amount of property worth much more than the debt due to him when he made the purchase. It is settled law in this state that a debtor in failing circumstances may prefer a creditor, and transfer to him property in payment of his debt; and that the transfer will be good, though the preferred creditor knows that it necessarily hinders and delays other creditors, provided the value of the goods conveyed be reasonably proportionate to the amount of the debt extinguished by the conveyance. Lewy & Co. *v.* Fischl, 65 Tex., 311; Ellis *v.* Valentine & Son, 65 Tex., 532.

But it has never been held that a sale to a creditor of a larger amount of goods than was necessary to pay his debt would, from that fact alone, and under all circumstances, be fraudulent and void. Whilst such a transaction cannot be sustained when the creditor knows the vendor to be insolvent, and that the sale is made for the purpose of defeating and defrauding other creditors, there is no reason why it should not be up-held, if the vendee does not know, and is not in possession of facts which would arouse the suspicion of an ordinarily prudent man, and put him upon inquiry as to the fraudulent intentions of the seller. In other words, there is no reason why he should not be placed upon the same plane with other purchasers, merely because he has paid a part of the purchase money in cancelling a debt due him from the vendor, if the sale be in all respects fair and honest. It is true that a sale out of the usual course of trade must generally be regarded with suspicion, but this circumstance, like any other, is open to explanation. Here it was shown that the sale was made by a man in ill health, in fact upon the verge of the grave, and who could not, if he would, have continued or carried on any business whatever. Whether this be a sufficient explanation or not, is not important in this case, for it is not contended that the facts show in Carpenter any notice of a design on the part of Cummins to defraud his creditors, such as would vitiate a sale to an ordinary purchaser; but that, no matter how honest his intentions might have been, he could not have made a valid purchase of the goods to a greater amount than was reasonably proportionate to the size of his debt against his vendor. We cannot concur in this view of the law.

From what we have said, our views are that a sale to a creditor who takes property of value reasonably proportionate to his debt will be upheld, though he knew of the insolvency of his debtor and of his intent to hinder and delay other creditors. This arises from that principle of our law which allows a failing debtor to prefer one cred-itor over another. But, if a creditor purchases enough property to pay his debt, and more besides. though he pay a consideration for the the remainder, the sale will not be upheld. unless it was made under such circumstances as would validate it. if made to any other purchaser.

The charge of the court below proceeded upon this view of the law, and we cannot see that it is incorrect. It distinctly instructed the jury that the sale to Carpenter was not valid, if he knew or was put upon inquiry as to any intent of Cummins in making the sale to hinder, delay or defraud his creditors It treated Carpenter as a purchaser from Cummins. and subjected him to the rigid rules applied to pur-chasers from parties who have parted with their property for the pur-

pose of defrauding their creditors. To entitle Carpenter to be so treated as such, it was only necessary that he should have paid a valuable consideration for the goods, and not a price greatly less than their reasonable worth. He gave up a debt of some $320 due Cummins, and his note for $412 besides. These two sums make up an amount nearly equal to the appraised value of the goods. It is not contended that the manner in which the consideration was paid cast any suspicion upon the transaction, but that a creditor is absolutely debarred from making a purchase of the goods of his debtor, except in an amount about equal to the amount of his debt. This was the theory of the first special charge asked by the appellants, and it was rightly refused.

The judge below in refusing it properly said that the facts of this case were not the same as in Greenleve, Block & Co. v Blum, 59 Tex., 124, from the opinion in which the language of the charge was taken. Every charge must be tested by the facts to which it is to be applied. The language of the supreme court in passing upon one case cannot be used in every other case presenting some facts in common with those the court was then considering, without sometimes leading the jury into error and deciding upon the weight of testimony. The present case furnishes a good illustration. In Greenleve, Block & Co. v. Blum, the purchase was made by creditors, they taking a much larger amount of goods than was necessary to pay their debts, and agreeing with the debtor to give him the benefit of the surplus that might remain after their debts were satisfied. In so far there may be some analogy between that case and this. But it there also appeared, as it does not here, that those creditors had every reason to know that their debtor was selling to them, and getting this advantage as to the surplus over and above their debts for himself, in order to defraud his other creditors.

The court here, in its general charge, told the jury, in effect, that the law, as given by this court in the case cited, was to govern them in the event notice of Cummins' fraudulent design was chargeable upon Carpenter. This was in strict pursuance of the doctrine of that decision. To have charged it in the language of the special instruction, would have informed the jury that it applied, no matter whether any facts with reference to notice to Carpenter were proved or not. This was not warranted by the opinion, and could not have been given. It would have been glaringly wrong to have given such a charge in this case, when it is not contended, upon appeal, that there is any evidence tending to show a guilty participation by the purchaser in the fraud of the seller, if, indeed, there be any fraud whatever proved. The

law of the case was fully given in the general charge, and both special charges were rightly refused.

There was sufficient proof of the value of the goods seized. Carpenter, after examining the inventory of the goods, as returned by the sheriff, stated that they were the same bought by him from Cummins, and he knew that the kind, value and amount, as stated in the return, were correct. The jury's finding was less than the value or amount sworn to by him. Allen's and Chambliss' testimony was admissible as corroborative of Carpenter's on this subject. It showed that he had not over estimated the value of the goods. The objections to the latter are untenable. The whole circumstances surrounding the transaction, including the possession of the goods held by D. W. Cummins for his brother, and the fact that the latter is not shown to have had any other property in Decatur, were enough to identify the goods sold as those alluded to in the letter.

There is no error in the judgment, and it is affirmed.

AFFIRMED.

[Opinion delivered April 27, 1886.]