## E. L. FROST, TRUSTEE, v. S. J. MASON ET AL.

### Delivered December 18, 1897.

**1. Charge of the Court—Fraudulent Conveyance—Knowledge and Participation of Beneficiary.**

A charge that knowledge by beneficiaries of the fraudulent intent of a mortgagor would avoid the conveyance as to creditors defrauded thereby, is not erroneous for failure to instruct that such beneficiary must also participate in the mortgagor's intent and purpose, when the conflicting testimony, which the jury believed and on which their verdict rested, showed actual participation.

**2. Same—Same—Same—Conflicting Instructions.**

An instruction that knowledge alone by a mortgagee of the fraudulent intent of the mortgagor in executing the instrument would avoid it, is not in conflict with a subsequent instruction which required participancy on the part of the mortgagee, as well as knowledge, since the latter is explanatory of the former, and, being in favor of the mortgagee, affords no ground of complaint by him.

**3. Fraudulent Conveyance—Agreement in Fraud of Creditors.**

An agreement made by one of the beneficiaries under a trust deed of a stock of goods, to purchase the property at a contemplated sale, and thereafter allow the mortgagor to continue the business for the purpose of paying the claims preferred in the trust deed, can not be upheld on the ground that the agreement only contemplated a purchase at a fair price, thereby not defrauding the other creditors, where the evidence tends to show that the purchaser was to act as trustee of the mortgagor, turning over to him the residuary interest after payment of its claim, and that the arrangement would be beneficial to the mortgagor in proportion to the lowness of the purchase price.

**4. Same—Same—Evidence Sustaining Finding.**

Where the agent of mortgagees was told by the mortgagor that he had agreed with another mortgagee to so mortgage his stock, whenever his creditors should push him, that he would receive the residuary interest after satisfying the mortgagee, there is sufficient evidence to support a finding that the agent of the mortgagees had knowledge of the fraudulent intent of the mortgagor.

**5. Assignment of Error—Too General.**

An assignment of error upon the admission and exclusion of testimony reserved in numbered bills of exceptions referred to and made a part of the assignment, is too

general for consideration, when the bills refer to different and distinct phases of the testimony.

**6. Charge of Court—Requested Instruction.**

An instruction sufficiently covered by the charges given, is properly refused.

ERROR from Hunt. Tried below before Hon. J. G. RUSSELL.

*Mathews & Neyland, McCormick & Spence,* and *Robert R. Neyland,* for plaintiff in error.—A bona fide creditor may be preferred by a debtor, even though he knows that it is the purpose of the debtor to hinder, delay, and defraud his other creditors, and that the effect of such preference is to hinder, delay, and defraud the other creditors of the debtor, provided the preferred creditor acts openly, in good faith, and for the purpose of collecting his debt, and without any intent to assist the debtor in hindering, delaying, and defrauding his other creditors. Edrington v. Rogers, 15 Texas, 188; Greenleve v. Blum, 59 Texas, 124-128; Levy v. Fischl, 65 Texas, 318; Elser v. Graber, 69 Texas, 225; Ellis v. Valentine, 65 Texas, 532; Allen v. Carpenter, 65 Texas, 138.

*Perkins, Gilbert & Perkins* and *Craddock & Looney,* for defendants in error.—Although a debtor has a right to prefer one creditor to another, and by making a transfer of his property to one favored creditor to defeat another, provided he do so in an open manner, and without any further object than his act upon its face imports, still the law will not allow a creditor to make use of his demand to shield his debtor; and, while he leaves him in statu quo, by forbearing to enforce the assignment, to defeat the other creditors by insisting upon it. Edrington v. Rogers, 15 Texas, 188; Mills v. Howeth, 19 Texas, 257; Baylor v. Brown, 21 S. W. Rep., 73; Stuart v. Smith, 21 S. W. Rep., 1026.

TARLTON, CHIEF JUSTICE.—On December 23, 1895, A. B. Patterson, an insolvent merchant, engaged in a retail business at Greenville, Texas, executed to E. L. Frost a deed in trust or chattel mortgage whereby he conveyed to Frost, as trustee, his stock of merchandise, to secure the following named creditors in the order and for the amounts thus stated: E. L. Frost, $900; Burnham, Hanna, Munger & Co., $2028; Matthews & Neyland, $250; Greenville National Bank, $5700; John V. Farwell Co., $105; Adolph Babbitt & Co., $138.

The benefits of the instrument were accepted by all the creditors therein named, except the Greenville National Bank, and, so accepted, the instrument was forthwith filed for record by the trustee.

On December 24, 1895, while the goods were in the possession of the trustee, they were seized by virtue of a valid writ of attachment sued out by the Greenville National Bank. On account of this seizure and the sale had thereunder this suit was instituted by Frost, the trustee, for the benefit of the creditors claiming under the instrument, to recover the value of the merchandise. S. J. Mason, the sheriff who levied the writ, and the sureties on the indemnity bond executed to him by the Green-

ville National Bank, and the latter, were parties defendant in the action.

A trial before a jury resulted in a verdict for the defendants, on the ground that the deed in trust was made with the intent to hinder, delay, and defraud the creditors of Patterson, and was hence void. From a judgment in accordance with this verdict, the plaintiff Frost prosecutes this writ of error.

The creditors Burnham, Hanna, Munger & Co. were represented in the arrangement involving the execution and acceptance of the deed in trust by Mr. C. W. Miller, the remaining accepting creditors by Mr. Mayo Neyland, except E. L. Frost, who represented himself. It appears that before the trial the bank paid off the debt of Frost.

Under the issues submitted by the charge, the record indicates that the jury found that Miller, the agent of Burnham, Hanna, Munger & Co., induced Patterson to execute the deed in trust; that there was a verbal agreement between Patterson and Miller not incorporated in the written instrument, but which was the inducement to its execution, to the effect that Frost should take possession of the goods, make an inventory of them, and sell them, and that Burnham, Hanna, Munger & Co. would buy them in, for the purpose of permitting Patterson to carry on the mercantile business, which would be carried on in the name of Burnham, Hanna, Munger & Co., who would furnish goods to replenish the stock, and so carry on such business until such time as the claims preferred in the deed of trust ahead of Burnham, Hanna, Munger & Co., and also their claim and such sum as they had furnished Patterson to carry out such agreement, should be paid, and that the residue should revert to Patterson for his use or benefit; and the jury further found that if this agreement had been consummated, it would have had the effect of hindering, delaying, or defrauding the Greenville National Bank in the collection of its debt against Patterson.

The jury also found that Frost, Matthews & Neyland, the John V. Farwell Co., and Adolph Babbit & Co. knew of the existence of such verbal agreement between Miller and Patterson, or that they had knowledge of such facts as would put a prudent man upon inquiry as to whether such agreement had been made, a proper pursuit of which inquiry would have disclosed to them the existence of the agreement, and that with such knowledge they accepted under the mortgage. The knowledge with which Matthews & Neyland, the John V. Farwell Co., and Adolph Babbitt & Co. were found to be affected was through Mayo Neyland, a member of the firm of Matthews & Neyland, and the representative of the John V. Farwell Co. and Adolph Babbitt & Co.

Perforce of the verdict of the jury, resting upon evidence, though conflicting, we find as above indicated.

*Conclusions of Law.*—1. The court in its general charge thus instructed the jury: "But when a mortgage or deed of trust is executed, although the claims secured by it may be just, but the same is made on the mortgagor's part to cover up the property and fix it so that said

property or the proceeds of the sale thereof, after any specified claim or claims are paid, may revert to the benefit of the mortgagor, and thereby prejudice other creditors and hinder or defraud them in the collection of their debts, and if the claimants named in the mortgage or deed of trust knew of this intent upon the part of the mortgagor, or had knowledge of such facts as would put a prudent man upon inquiry as to what was the intent of the mortgagor, and a proper pursuit of such inquiry would have led to a knowledge of such fraudulent intent, then such mortgage or deed of trust would be void as to the creditor or creditors so delayed, hindered, or defrauded."

The foregoing paragraph of the charge is made the subject of the first assignment of error, on the ground that as to the accepting beneficiaries it condemned the mortgage in the event that they had knowledge merely of the mortgagor's fraudulent intent and purpose, whereas it is insisted that they must have participated in that intent and purpose. In treating this paragraph, it is but fair to consider the succeeding portion of the charge, in which the court sought to apply the law as thus announced to the testimony introduced by the defendants.

The charge proceeds as follows: "If you find from the evidence that one Miller, the agent of Burnham, Hanna, Munger & Co., induced Patterson to execute the chattel mortgage or deed of trust, and if you find that there was a verbal agreement between Patterson and Miller, not incoporated in the written mortgage or deed of trust, but which was the inducement to its execution, to the effect that Frost should take possession of the goods, make an inventory of the same, and sell them, and that Burnham, Hanna, Munger & Co. would buy them in, for the purpose of permitting Patterson to carry on a mercantile business, which would be carried on in the name of Burnham, Hanna, Munger & Co., who would furnish goods to replenish the stock, and so carry on such business until such time as the claims preferred in said deed of trust or chattel mortgage ahead of Burnham, Hanna, Munger & Co., and also their claim and such sum as they had furnished Patterson to carry out such agreement, should be paid, and that the residue should revert to Patterson for his use or benefit; and if you further find that such agreement and transaction, if the same had been consummated, would have had the effect of hindering, delaying, or defrauding the Greenville National Bank in the collection of its debt against Patterson, then the mortgage or deed of trust would be fraudulent and void as to the claim of Burnham, Hanna, Munger & Co., and you should find for the defendants as to such claim, and proceed to inquire as to the other debts mentioned in the mortgage. If, in addition to the above, you find that Frost, Matthews & Neyland, the John V. Farwell Co., and Adolph Babbitt & Co. knew of the existence of such verbal agreement, if any, between said Miller and Patterson, or had knowledge of such facts as would put a prudent man upon inquiry as to whether such agreement had been made, and a proper pursuit of such inquiry would have disclosed to them the existence of such agreement, and if with such knowledge they accepted under such mort-

gage, then you will return a general verdict for the defendants. And in this connection you are instructed that if Mayo Neyland, Esq., was the agent of the John V. Farwell Co. and Adolph Babbitt & Co., and acted as such agent for them in arranging for them in the making of said mortgage or deed of trust and accepting thereunder, then whatever information was had by said Mayo Neyland, Esq., would be in law the information of the John V. Farwell Co. and of Adolph Babbitt & Co., provided such information came into the possession of said Mayo Neyland prior to the consummation of said mortgage transaction and their acceptance thereunder."

The testimony on which this charge of the court is predicated is as follows:

The mortgagor, Patterson, testified, as stated in appellant's brief, "that he executed the mortgage because Miller said that the stock would be put up for sale, and if it did not bring cost or very nearly that amount, he would buy it and restock it and place some one in charge of it, and that he would just as soon witness's brother or witness should have charge of it; that his experience in many instances had been that he had gotten nearly invoice price out of goods, and that after he got his money that they had put in to buy the stock and stocking it up, the balance should go back to pay the witness's debts as he saw fit. All witness's other creditors was meant by the witness. Witness was to get the benefit of the profits."

Again: "Prior to the execution of the mortgage witness had had conferences with Miller about a settlement of the claim, and the execution of a chattel mortgage had been mentioned in September, 1895, between them. Miller said then that if the creditors pressed witness too hard, the best thing for him to do would be to make a chattel mortgage, and that he (Miller) would buy the stock in. Miller asked witness what he was going to do about the claim of Burnham, Hanna, Munger & Co. in September, and witness said he wanted to pay the bank up, and get an extension of his debts from his other creditors. Miller said as his was the largest commercial claim, he would come down the first of the year and use his influence to get an extension. About that time witness told M. W. Neyland that Miller said that if he got too hard pressed he could make a deed in trust, and that he could buy the stock of goods in for witness, and enable witness to get all out of the goods that he could, and after his house got its money out of the stock, they would turn it back to him. Mr. Neyland told witness to keep that quiet, as it would give other creditors grounds for attachment, but that he believed Miller would do what he said, as he had done it in a number of other instances. This was three or four months before the execution of the chattel mortgage that witness told Neyland this, and he had several conversations with him about the debts Neyland held against him."

The trustee Frost testified that a few days before the execution of the trust deed Miller suggested that he would make witness trustee for the stock in question, and "that witness should sell it out and his people,

Burnham, Hanna, Munger & Co., would buy it in, stock it up, and let witness run it out. Witness don't remember exactly what Miller did say. About the substance of it, as witness remembers the conversation, was that after Burnham, Hanna, Munger & Co. got their money out of the stock, the balance was to go back to Patterson."

If a distinction should obtain between knowledge on the part of the beneficiaries of the intent of the mortgagor to do an unlawful thing and acquiescence or participancy in such intent—a proposition the correctness of which we are not prepared to approve, though we do not decide it—such a distinction would not be materially applicable in this instance. The entire testimony presents two theories, and two only, as to this transaction. The theory of the plaintiff excludes, under the testimony introduced in his behalf, the existence of any arrangement save one which was consistent with fair dealing and a justifiable effort on the part of Miller, the representative of Burnham, Hanna, Munger & Co., to secure the execution of a chattel mortgage of which no creditor could complain. The other theory, that of the defendants, rests upon a transaction such as detailed by the foregoing testimony. This theory, if believed by the jury, involved not only participancy, but indeed invention or creation, by the representative of Burnham, Hanna, Munger & Co., and actual knowledge and acquiescence in counseled concealment on the part of the representative of the remaining accepting creditors, *except E. L. Frost*, who has lost all interest in the suit *because his indebtedness has been paid by the bank*.

The jury were required by the charge to believe that version of the transaction indicated by the testimony above set out. Believing that, they must also have found actual participation by the representative of Burnham, Hanna, Munger & Co., and knowledge of the fraudulent intent by the representative of the remaining interested accepting creditors, aiding and abetting in the accomplishment of the fraudulent scheme. It is but fair to the representatives of these accepting creditors to say that their testimony excluded the existence of such participancy or knowledge, but this is an issue which was submitted to the jury, whose solution is binding upon this court.

The second proposition under this assignment asserts a conflict between the charge of the court above set out and a special instruction given at the request of the plaintiff. The brief of the plaintiff in error does not set out this special instruction, but refers us to page 23 of the transcript, containing the following sole special instruction given at the plaintiff's instance: "You are instructed that any hindrance or delay resulting from a conveyance of property by an insolvent in favor of preferred creditors which does not operate as a fraud upon the other creditors is not that hindrance and delay which is prohibited by the law. Therefore, unless you find from a preponderance of the testimony that an agreement was made before or at the time of the execution of the chattel mortgage under which plaintiff claims his rights herein, by and between A. B. Patterson and C. W. Miller, representing Burnham,

Hanna, Munger & Co., which was made with the intent to hinder, delay, or defraud the creditors of Patterson other than Burnham, Hanna, Munger & Co., and which if carried out would have resulted in defrauding them, then such agreement would not be unlawful, and you would find for the plaintiff."

We find no conflict between the propositions announced in this requested instruction and those embodied in the general charge of the court. If, as might be implied from the brief of the plaintiff in error and the statement under this proposition, a charge was given which has been omitted from the record, and which required participancy on the part of the accepting creditors, in addition to the existence of knowledge on their part, we are of opinion that such an instruction would not have presented a conflict with the general charge, but would have been explanatory thereof, and have indicated that participancy must coexist with knowledge, a matter of which appellant could not complain.

In this connection, it may not be amiss to state that the authorities cited by plaintiff in error do not, in our opinion, sustain the distinction which he seeks to make between a condition in which the mortgagee creditor *knows* of the *fraudulent* intent of the mortgagor (by which we understand not a mere intent to prefer creditors, which is lawful, but an intent to do an unlawful thing), and a condition in which he *participates* in such intent. On the contrary, these cases seem to treat such knowledge and participancy as equivalents.

Thus, in Allen v. Carpenter, 66 Texas, 140, our Supreme Court approves a charge in which the jury were instructed "that the sale to Carpenter (a creditor) was not valid if he knew or was put upon inquiry as to any intent of Cummins (the vendor) in making the sale to hinder, delay, or defraud his creditors."

So, in Ellis v. Valentine, 65 Texas, 548, the court, after elaborating the distinction which exists between a mere intent to hinder and delay and the more comprehensive intent to hinder, delay, or *defraud*, holds that in order to vitiate the sale "the notice to the grantee must be a notice of an intent on the part of the debtor to delay, hinder, or defraud in the legal sense of those terms as used in the statute."

So, in Cox v. Miller, 54 Texas, 47, the language is: "Nor will the fact that the result of a fraudulent deed is to secure the payment of a valid and bona fide debt, equal or greater in amount than the property conveyed, remove from the deed the taint of fraud as against the grantee chargeable with notice of the wrongful intent and purpose of its execution."

This language is quoted with approval in the case of Kraus v. Haas, 6 Texas Civil Appeals, 665, 25 Southwestern Reporter, 1028, in which, on motion for a rehearing, the court says: "We see no reason to recede from our former position that the fraudulent intent of the mortgagor, unless *known* to the mortgagee or unless it was *participated* in by the mortgagee, will not invalidate the instrument."

2.  The third, fourth, fifth, seventh, eighth, ninth, and eleventh assignments of error rest upon the appellant's contention that the undis-

puted testimony shows that Miller, for Burnham, Hanna, Munger & Co., was only to purchase the property in the event that it failed to bring its fair and reasonable market value at the contemplated trustee's sale; and hence, that if the arrangement had been consummated, it could not have resulted in defrauding any of the creditors of Patterson. There is testimony in the record which tends, indeed, to support this contention, but we think that the transaction as detailed by Frost and Patterson in the testimony above set out was susceptible of a construction entirely different. Their testimony admits of the interpretation, which the jury evidently accepted, that the agreement did not necessarily contemplate a purchase by Miller at a fair price. Their testimony tends to show that Burnham, Hanna, Munger & Co., as to a residuary interest in the stock of goods, and as to the profits arising from their sale, were to become trustees for Patterson, the mortgagor.

If the goods were to be purchased only in the contingency that they failed to bring a fair and reasonable market value, what interest could possibly remain in Patterson, or what profit to him could arise from their sale? Hence the deduction that the arrangement contemplated, in order to bring about the results beneficial to Patterson, that the stock should be bought by Miller at as reduced a price as possible, a result which the jury might have believed, and probably did believe, could be accomplished by and with the consent and connivance of the trustee, invested with full control over the disposition of the property.

3. The testimony of Frost and of Patterson refutes the proposition contained in the sixth assignment of error, to the effect that there was absolutely no evidence tending to show that E. L. Frost or Mayo Neyland had any knowledge, actual or constructive, of the fraudulent intent of Patterson and Miller in the execution of the instrument.

4. The tenth assignment of error reads as follows: "The court erred upon the admission and upon the exclusion of testimony upon the trial of this cause, as shown by bills of exceptions reserved by the plaintiff from number 1 to number 9, inclusive, and filed herein and referred to as part and in support of this assignment of error, which bill of exceptions the plaintiff prays may be considered as a part of this assignment of error."

These bills refer to phases of the testimony entirely different and distinct. We consider the assignment in plain violation of the rules, and regard it as too general for consideration. Railway v. Downing, 82 Texas, 383.

5. The special charges numbers 2 and 3, the refusal of which is complained of in the thirteenth, fourteenth, and fifteenth assignments of error, were included within the general instruction, so far as the propositions contained in them were applicable.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.